872 F.2d 874
 29 ERC 1467, 57 USLW 2615, 19 Envtl.
L. Rep. 20,755
 UNITED STATES of America, Plaintiff-Appellee,
v.
STATE OF WASHINGTON; the Department of Ecology of the State
of Washington, Defendants-Appellants,
The Environmental Hearings Office of the State of
Washington, Defendant.
 No. 87-4371.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1989.
Decided April 12, 1989.
As Modified May 3, 1989.
 
 Kathleen D. Mix, Asst. Atty. Gen., Olympia, Wash., for defendant-appellant, Dept. of Ecology of the State of Wash.
 Jacques B. Gelin, Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Reed Sato, Deputy Atty. Gen., Sacramento, Cal., for amicus, State of Cal.
 Michael Axline, Western Natural Resources Law Clinic, Eugene, Or., for amicus.
 Appeal from the United States District Court for the Eastern District of Washington (Spokane).
 Before WRIGHT and ALARCON, Circuit Judges, and TEVRIZIAN*, District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 The State of Washington, the Department of Ecology of the State of Washington, and the Environmental Hearings Office of the State of Washington (hereinafter collectively referred to as "Washington") appeal from the grant of summary judgment in favor of the United States of America (United States). The issue we must decide in this case is whether Congress, in enacting the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. Sec. 6961 (1982), expressly and unequivocally waived federal sovereign immunity from administrative penalties assessed by a state for alleged violations of its hazardous waste management laws. Because we conclude that Congress has not expressly waived federal sovereign immunity from civil penalties imposed by a state administrative agency, we affirm.
 
 I.
 
 2
 The United States Department of Energy (DOE) owns and manages the Hanford Nuclear Reservation (Hanford), a nuclear production, research and development facility in Richland, Washington. On February 5, 1986, the Department of Ecology (Ecology) issued a "Notice of Penalty Incurred and Due to DOE" pursuant to Wash.Rev.Code Sec. 70.105.080 purporting to impose an administrative penalty in the amount of $49,000 for alleged violations at Hanford of the state of Washington's hazardous waste law. Section 70.105.080(1) provides, in relevant part: "Every person who fails to comply with any provision of this chapter or of the rules adopted thereunder shall be subjected to a penalty in an amount of not more than ten thousand dollars per day for every such violation." The administrative penalty was assessed for the following violations: (1) Operation of dangerous and hazardous waste solar evaporation basins without approval or permit; (2) Illegal accumulation of dangerous waste in four non-designated storage areas; (3) Failure to develop adequate closure and post-closure plans for fuel sites; (4) Failure to install a ground water monitoring system at its central landfill site or have a valid waiver; (5) Failure to install, operate, and maintain an adequate ground water monitoring system at the solar evaporation basins.
 
 
 3
 On March 7, 1986, the DOE filed an application with Ecology for relief from the penalty imposed by Ecology on the ground that Congress had not waived the United States' sovereign immunity from civil penalties imposed by state administrative agencies. On May 30, 1986, Ecology issued its "Notice of Disposition upon Application for Relief from Penalty" denying the application for relief from the penalty assessment.
 
 
 4
 The DOE filed a notice of appeal on June 30, 1986 with the Pollution Control Hearings Board (Hearings Board) seeking review of the denial of its application for relief on the ground that Ecology lacked jurisdiction to impose the penalties. The DOE also argued there was no factual basis for the penalties. On October 6, 1986, the DOE filed a motion to dismiss the penalty assessment based on sovereign immunity. On January 12, 1987, the Hearings Board denied the motion to dismiss. The Hearings Board concluded that administrative penalties are within the federal facilities provisions of RCRA, 42 U.S.C. Secs. 6901 et seq. (1982 & Supp. IV 1986).
 
 
 5
 The United States filed a complaint for declaratory relief in United States District Court for the Eastern District of Washington on May 4, 1987. The complaint alleges that Ecology and the Hearings Board violated the doctrine of sovereign immunity by attempting to impose a civil penalty on the DOE. The parties filed cross-motions for summary judgment on June 18, 1987.
 
 
 6
 The district court granted summary judgment in favor of the United States on October 30, 1987. On January 22, 1988, the district court filed findings of fact and conclusions of law. The district court made no factual finding as to any alleged violation of state or federal environmental law by the United States. The district court concluded that Section 6001 of RCRA, 42 U.S.C. Sec. 6961, does not contain a waiver of sovereign immunity from civil penalties imposed by state administrative agencies. The district court held that the term "requirements" as used in section 6961 does not refer to civil penalties imposed by state administrative agencies.
 
 II.
 
 7
 Washington offers three arguments in support of its appeal:
 
 
 8
 One. The plain words of 42 U.S.C. Sec. 6961 contain a sweeping waiver of sovereign immunity allowing the imposition of civil penalties.
 
 
 9
 Two. Congress' reaction to the narrow construction given to the word "requirements" in Hancock v. Train, 426 U.S. 167 [96 S.Ct. 2006, 48 L.Ed.2d 555] (1976) in its subsequent amendment to the Clean Air Act demonstrates that section 6961 was intended to include a waiver of sovereign immunity regarding civil penalties imposed against federal facilities by a state administrative agency.
 
 
 10
 Three. The district court erred in concluding this court's interpretation of the word "requirements" in California v. Walters, 751 F.2d 977 (9th Cir.1984) is applicable to civil penalties.
 
 
 11
 An amicus brief filed by several states (Colorado, et al.), urges us to reverse the district court, arguing that because Congress authorized a citizen suit against the United States under the RCRA, it also intended to waive sovereign immunity regarding civil penalties by state administrative agencies. We discuss each of these contentions separately after explaining our standard of review and the applicable rulings governing the interpretation of an alleged waiver of sovereign immunity.III.
 
 
 12
 We review the grant of summary judgment independently, without deference to the district court's rulings, in "the light most favorable to the non-moving party, to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986) (citations omitted).
 
 
 13
 Absent an express waiver of sovereign immunity, the "activities of the Federal Government are free from regulation by any state." Mayo v. United States, 319 U.S. 441, 445, 63 S.Ct. 1137, 1139, 87 L.Ed. 1504 (1943) (footnote omitted). Congress may waive sovereign immunity and authorize the states to regulate federal instrumentalities. Id. at 446, 63 S.Ct. at 1140. Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (citation omitted).
 
 IV.
 Section 6961 provides in pertinent part:
 
 14
 Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief ), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief.
 
 
 15
 42 U.S.C. Sec. 6961 (emphasis added).
 
 
 16
 Washington argues that "sensibly construing the statute as a whole according to the plain meaning of the words used in the statute [citation omitted] [this] court must reach the affirmative conclusion that the United States is subject to state-imposed penalties under RCRA for violations of hazardous waste laws." Section 6961 does not contain an unequivocal expression of a waiver of sovereign immunity to civil penalties imposed by a state administrative agency. Washington asks us to imply a waiver of state imposed penalties because Congress provided in section 6961 that all federal facilities be subject to all substantive and procedural "requirements" contained in state laws controlling solid or hazardous waste disposal. We disagree.
 
 
 17
 The plain words employed by Congress make it clear that federal facilities must comply with a state's substantive standards for waste disposal. A federal facility must also obtain all necessary permits and file reports required by state law. The statute makes no reference to immunity from penalties imposed by state agencies. Section 6961 does provide, however, that United States agencies are not immune from sanctions imposed by a court for a violation of an order to comply with an injunction compelling compliance with a requirement of state law. Thus, the only unequivocal and express reference to sovereign immunity in section 6961 is directed at court -ordered sanctions for a violation of an injunction. "In short, Congress demonstrated that it knows how to select language to waive sovereign immunity to criminal penalties and civil damages, if it so intends." Parola v. Weinberger, 848 F.2d 956, 962 n. 3 (9th Cir.1988). Congress has not expressly waived sovereign immunity from civil penalties imposed by state administrative agencies.V.
 
 
 18
 Washington contends that the language used in section 6961 becomes clear if we understand the holding of the Supreme Court in Hancock v. Train, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) and its companion case, Environmental Protection Agency v. California ex rel. State Water Resources Control Bd., 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976) and consider Congress' response. In Hancock v. Train, the Supreme Court held that the word "requirements" in section 118 of the Clean Air Act (42 U.S.C. Sec. 1857f (1976))[1] did not compel a federal facility to obtain a permit because the statute did not specify that United States agencies must comply with "all" state requirements. Hancock, 426 U.S. at 182, 96 S.Ct. at 2014. The Supreme Court explained its ruling in the following language:
 
 
 19
 Given agreement that Sec. 118 makes it the duty of federal facilities to comply with state-established air quality and emission standards, the question is as the Fifth Circuit put it in another case, "whether Congress intended that the enforcement mechanisms of federally approved state implementation plans, in this case permit systems, would be" available to the States to enforce that duty. Alabama v. Seeber, 502 F.2d 1238, 1247 (5th Cir.1974).
 
 
 20
 Id. at 183, 96 S.Ct. at 2014 (emphasis added).
 
 
 21
 The Clean Air Act was amended in 1977 to provide that a federal facility:
 
 
 22
 (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, and each officer, agent, or employee thereof, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity.
 
 
 23
 42 U.S.C. Sec. 7418 (1982) (emphasis added).
 
 
 24
 The House Report on the amendment stated as follows: "The new section ... is intended to overturn the Hancock case and to express, with sufficient clarity, the committee's desire to subject Federal facilities to all Federal, State, and local requirements--procedural, substantive, or otherwise--process and sanctions." Clean Air Act Amendments of 1977, Pub.L. No. 95-95, 1977 U.S.Code Cong. & Admin.News (91 Stat.) 1077, 1278.
 
 The Senate expressed a similar purpose:
 
 25
 This act has been amended to indicate unequivocally that all Federal facilities and activities are subject to all the provisions of State and local pollution laws. Though this was the intent of the Congress in passing the 1972 Federal Water Pollution Control Act Amendments, the Supreme Court, encouraged by the Federal agencies, has misconstrued the original intent.
 
 
 26
 Clean Water Act of 1977, Pub.L. No. 95-217, 1977 U.S.Code Cong. & Admin.News (91 Stat.) 4326, 4392. Washington contends that since the RCRA was enacted in 1976, only months after the Hancock v. Train and EPA v. California decisions, Congress used the words "both substantive and procedural" in section 6961 in referring to "requirements" to avoid the narrow interpretation given to "enforcement mechanisms" by the Supreme Court in Hancock v. Train and EPA v. California.
 
 
 27
 Washington's interpretation of Congress' reaction to Hancock and EPA v. California explains the inclusion of the word "permits" in section 6961. As Washington forthrightly concedes, however, "civil penalties assessed by an administrative agency are not addressed directly by the RCRA language." Appellant's Opening Brief, page 18.
 
 
 28
 The legislative history of the RCRA contains no reference to a waiver of immunity concerning the enforcement by a state of violations of its requirements through civil penalties. The statute is also silent. As noted above, waiver of sovereign immunity cannot be implied, it must be express and unequivocal.
 
 VI.
 
 29
 Washington also asserts that our decision in Walters, 751 F.2d 977 (9th Cir.1985) should be "clarified or reversed." Washington contends that this court's interpretation of section 6961 as limiting state enforcement of the substantive and procedural requirements of solid and hazardous waste disposal statutes against federal facilities to court imposed sanctions for violation of an injunction reveals "a misreading" of the plain language of the statute. Appellant's Opening Brief, page 28.
 
 
 30
 In divining Congressional intent, "we look first to the statutory language and then to the legislative history if the statutory language is unclear." Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The word "requirements" as used in section 6961 appears to us to be ambiguous. Accordingly we must look to the legislative history of section 6961 to determine if Congress intended to waive federal immunity from the imposition of civil penalties by administrative agencies. See also Foxgord v. Hischemoeller, 820 F.2d 1030, 1034 (9th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987) (since 28 U.S.C. Sec. 1351(1) is ambiguous as to its application to honorary consul, court may look at legislative history to determine its meaning and scope).
 
 
 31
 In Walters, we examined the legislative history of section 6961 to determine whether Congress intended to waive sovereign immunity regarding criminal penalties ordered for a violation of state law regulating hazardous waste. Walters, 751 F.2d at 978. In Walters, the City Attorney of Los Angeles initiated a criminal prosecution in state court against the Veterans Administration Hospital and its administrator for disposing of hazardous medical waste in violation of California law. Id. We concluded that the word "requirements" in section 6961 referred solely to waste disposal standards, permits, and reporting duties. Id. We also determined in Walters that criminal sanctions are not "requirements," but "the means by which the standards, permits, and reporting duties are enforced." Id. Accordingly, we held in Walters that section 6961 does not contain a waiver of sovereign immunity to a criminal action instituted in a state court to enforce California's hazardous waste laws. Id. at 978-79. We summarized our holding in the following sentence: "Section 6961 plainly waives [sovereign] immunity to sanctions imposed [by a state or federal court] to enforce injunctive relief, but this only makes more conspicuous its failure to waive immunity to criminal sanctions." Id. at 978.
 
 
 32
 In Parola we were asked to determine whether the obligation to obey "local requirements" under section 6961 includes a duty to comply with a local ordinance awarding an exclusive garbage collection franchise. Parola, 848 F.2d at 960. We concluded that exclusive garbage collection franchises are "requirements" under section 6961. Id. at 962. We distinguished our holding in Walters as follows:
 
 
 33
 Our conclusion does not conflict with this court's prior holding in California v. Walters, 751 F.2d 977 (9th Cir.1984) (per curiam). In Walters, we held that RCRA Sec. 6001 did not waive sovereign immunity as to state criminal sanctions designed to enforce compliance with "state waste disposal standards, permits and reporting duties." Id. at 978. The court reasoned that the language and legislative history of Sec. 6001 did not show a clear and unambiguous legislative intent to waive sovereign immunity. Id. at 979; see also Florida Dept. of Env. Reg. v. Silvex Corp., 606 F.Supp. 159 (M.D.Fla.1985) (RCRA Sec. 6001 does not waive sovereign immunity for civil damages penalty). The Walters holding is plainly correct in light of the plain language of RCRA Sec. 6001 as compared with Sec. 118 of the Clean Air Act. Section 6001 explicitly subjects federal agencies to sanctions only "as may be imposed by a court to enforce [injunctive] relief." 42 U.S.C. Sec. 6961. In contrast, Sec. 118, as amended in 1977, subjects federal agencies to "all ... State ... process and sanctions respecting the control and abatement of air pollution." 42 U.S.C. Sec. 7418. In short, Congress demonstrated that it knows how to select language to waive sovereign immunity to criminal penalties and civil damages, if it so intends. We do not read Walters as excluding from the definition of "requirements" the "means of implementing standards." Cf. Walters, 751 F.2d at 978 ("Criminal sanctions, however, are not a 'requirement' of state law within the meaning of [42 U.S.C.] Sec. 6961, but rather the means by which the standards, permits and reporting duties are enforced."). Permits and reporting duties are means of implementing environmental standards, and are clearly state "requirements." An exclusive garbage collection system is more like a permit requirement than a criminal sanction.
 
 
 34
 Id. at 962 n. 3.
 
 
 35
 In Walters, we expressly rejected the city attorney's argument that in enacting section 6961 several months after Hancock v. Train, Congress intended to waive immunity to criminal sanctions for violations of a state's hazardous waste laws. Id. at 978-979. Thus, under the law of this circuit, criminal prosecution is not an enforcement mechanism covered under section 6961.
 
 
 36
 Washington's request that we overrule Walters is beyond our authority. "We are bound by decisions of prior panels" unless an en banc decision, Supreme Court decision, or subsequent legislation undermines those decisions. Montana v. Johnson, 738 F.2d 1074, 1077 (9th Cir.1984). We also reject Washington's suggestion that Walters needs further clarification.
 
 
 37
 We have not previously been called upon to determine whether our reasoning in Walters is applicable to an attempt by a state administrative agency to impose a civil penalty. This precise question has been considered by several district courts with conflicting results.
 
 
 38
 In McClellan Ecological Seepage Situation (MESS) v. Weinberger, 655 F.Supp. 601 (E.D.Cal.1986), Judge Raul A. Ramirez concluded that a "plain face, common-sense reading of [section 6961] convinces this Court that there has not been a waiver of sovereign immunity regarding the imposition of civil penalties against federal facilities under RCRA." Id. at 603 (citing Meyer v. United States Coast Guard, 644 F.Supp. 221 (E.D.N.C.1986)).
 
 
 39
 Judge Ramirez forcefully summarized his views in the following words:
 
 
 40
 As indicated earlier, a waiver of sovereign immunity must be clear and concise and unequivocal. It will not be based upon ambiguities. There will not be a waiver brought about by implication or by bootstrapping or by borrowing. That does not mean that Congress has a duty to write a waiver in a certain or specialized way. But it must write with a clear hand, an unequivocal hand. And the Court must assume that the learned members of Congress, some of whom are learned members of various bars, can say waiver of sovereign immunity for civil penalties just as easily as any eighth grader writing the same type of legislation. They have not done that.
 
 
 41
 McClellan, 655 F.Supp. at 605.
 
 
 42
 In Ohio v. United States Dept. of Energy, 689 F.Supp. 760 (S.D.Ohio 1988), the district court rejected our analysis of section 6961 in Walters. Id. at 764. Accord Maine v. Department of Navy, 702 F.Supp. 322 (D.Me.1988).
 
 
 43
 We reaffirm our interpretation of section 6961 in Walters. The word "requirements" does not clearly and unambiguously express Congress' intent to waive sovereign immunity regarding an attempt to enforce its hazardous waste statutes by the imposition of a penalty, civil or criminal.
 
 VII.
 
 44
 Amici Colorado, et al., assert that because a citizen may bring a civil action against the United States for a violation of the RCRA pursuant to the express terms of 42 U.S.C. 6972(a)(1)(A) (Supp. IV 1986), it follows that a state administrative agency may impose a civil penalty against a federal facility under section 6961. This issue is not properly before this court. Therefore, we do not reach it.
 
 CONCLUSION
 
 45
 The enforcement mechanism expressly chosen by Congress to compel federal facilities to comply with state hazardous waste disposal laws is the injunctive and contempt power of the courts. Amici Colorado, et al., claim that "[u]nless civil penalties can be levied against federal facilities that violate hazardous waste laws, these facilities will violate such laws with relative impunity." Amicus Brief of Colorado, et al., page 1. That argument must be addressed to the legislative branch of our government.
 
 
 46
 AFFIRMED.
 
 
 
 *
 Honorable Dickran Tevrizian, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The Supreme Court in Hancock examined the language of the Clean Air Act which provided in pertinent part:
 Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, shall comply with Federal, State, interstate, and local requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements.