**Manuel ZAZUETA–CARRILLO, Petitioner,**

v.

**John D. ASHCROFT, U.S. Attorney General, Respondent.**

**No. 02–70259.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2002.

Filed March 13, 2003.

As Amended April 25, 2003.

Kevin A. Bove, Escondido, CA, for petitioner Manuel Zazueta–Carrillo.

Robert D. McCallum, Jr., Assistant Atty. Gen., Civil Division, Washington, DC, David V. Bernal, Asst. Dir., Office of Immigration Litigation, Washington, DC, Barry J. Pettinato, Trial Attorney, Office of Immigration Litigation, Washington, DC, for respondent John D. Ashcroft.

when the BIA enters its order granting voluntary departure.

Before: CANBY, GOULD, and BERZON, Circuit Judges.

Opinion by Judge GOULD; Concurrence by Judge BERZON.

GOULD, Circuit Judge.

When the Board of Immigration Appeals (BIA) decides that an alien is removable from the United States, the BIA may have discretion under 8 U.S.C. § 1229c to grant the alien the privilege of "voluntary departure." Voluntary departure is a time period during which the alien may leave the United States voluntarily rather than be removed. In this case, we are asked to decide *when* that voluntary departure period begins to run. Does it begin when the BIA enters its order granting voluntary departure? Or does it begin when we conclude our review of the BIA's decision on an alien's status? Although we held in *Contreras–Aragon v. INS*, 852 F.2d 1088, 1090 (9th Cir.1988) (en banc), that the voluntary departure period begins to run on the latter date, Congress dramatically rewrote immigration law eight years after our decision. Congress's revisions have undermined the *Contreras–Aragon* holding, so it is proper for us to reexamine the question of when the voluntary departure period begins. We hold today that, after Congress's recent changes to immigration law, the voluntary departure period begins

## I

Manuel Zazueta–Carrillo is a native and citizen of Mexico. He is removable from the United States because he was not properly admitted or paroled after inspection. When the Immigration and Naturalization Service sought to remove Zazueta–Carrillo, he applied for cancellation of removal under 8 U.S.C. § 1229b. The Immigration Judge denied his application. Zazueta–Carrillo appealed to the BIA. On July 20, 2001, the BIA affirmed the Immigration Judge's order, and, pursuant to 8 U.S.C. § 1229c, granted Zazueta–Carrillo thirty days to depart the United States voluntarily, beginning on the date of its order.[1] Zazueta–Carrillo filed a timely petition seeking our review.[2] He remained in the United States. Zazueta–Carrillo twice applied for a stay of removal pending review, and we denied both motions.[3]

On October 2, 2001, seventy-four days after the BIA granted him thirty days to depart voluntarily, Zazueta–Carrillo petitioned the BIA to reopen proceedings to allow him to apply for adjustment of status because his wife had become a naturalized United States citizen. The BIA denied Zazueta–Carrillo's petition on the ground that he had failed to depart the United States pursuant to the BIA's grant of vol-

---

1. The BIA's decision notified Zazueta–Carrillo in writing:

 NOTICE: If the respondent fails to depart the United States within the time period specified, or any extensions granted by the district director, the respondent ... shall be ineligible for a period of ten years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the [Immigration and Nationality] Act.

2. That petition, No. 01–71384, which challenges the BIA's decision on Zazueta–Carrillo's cancellation of removal claim, is also

before us on a separate petition for review. We deny that petition in a separate unpublished memorandum disposition.

3. In both No. 01–71384, (11/9/01) (Kleinfeld, McKeown, JJ.), and No. 02–70259 (4/15/02) (Kleinfeld, Gould, JJ.), we denied without prejudice Zazueta–Carrillo's requests for stays pending removal. Zazueta–Carrillo originally applied for a stay of removal on August 17, 2001, within the thirty-day voluntary departure period granted by the Immigration Judge on July 20, 2001.

untary departure. Zazueta–Carrillo then filed a petition for review with this court.

## II

▇ Before considering the main issue, we first must decide whether we have jurisdiction. The government argues that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) contains provisions that preclude jurisdiction here.

The first of these provisions states:

No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure ... nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure.

8 U.S.C. § 1229c(f). The opening clause of § 1229c(f) plainly states that no court shall have jurisdiction over a particular kind of appeal: appeals of *denials of requests for voluntary departure.* But no denial of a request for voluntary departure is at issue in this case. Zazueta–Carrillo's request for voluntary departure was granted, not denied. He does not appeal it. Rather, Zazueta–Carrillo petitions for review of the BIA's denial of his motion to reopen his case for readjustment of status. That the BIA based its denial on its belief that Zazueta–Carrillo's voluntary departure period had expired does not transform the BIA's order into a different kind of order. Given the plain language of the statute's first clause, we are not divested of jurisdiction to hear this case.

▇ Nor is this a "claim with respect to voluntary departure," within the meaning of the second clause of § 1229c(f). IIRIRA eliminates judicial review of certain enumerated decisions entrusted to executive discretion; it does not eliminate judicial review of all decisions bearing any relationship to voluntary departure. *See Lafarga v. INS,* 170 F.3d 1213, 1215 (9th Cir.1999) ("[A]s to those elements of statutory eligibility, which do not involve the exercise of discretion, direct judicial review remains"); *Kalaw v. INS,* 133 F.3d 1147, 1150 (9th Cir.1997) (same). The BIA decision at issue here did not involve the exercise of discretion. The BIA decided that Zazueta–Carrillo could not petition for adjustment of status because of the statutory bar of 8 U.S.C. § 1229c(d) for aliens who have not voluntarily departed. The BIA was simply following the law, not exercising discretion, when it denied Zazueta–Carrillo's motion to reopen. *See Lafarga,* 170 F.3d at 1215 (exercising jurisdiction over an immigrant's petition for review because the BIA's determination that she was per se ineligible for voluntary departure involved the application of a statute and therefore was not a discretionary decision). *See also INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that district courts retain jurisdiction after IIRIRA to decide habeas corpus challenges involving pure questions of law). Because the BIA decision was not discretionary, but rather an application of law, IIRIRA does not divest us of jurisdiction.

Finally, the government points to 8 U.S.C. § 1252(a)(2)(B)(i), which it also argues precludes our exercising jurisdiction. That provision states:

Notwithstanding any other provision of law, no court shall have jurisdiction to review ... any judgment regarding the granting of relief under section ... 1229c [voluntary departure] ... of this title.

The government's argument about § 1252(a)(2)(B)(i) suffers from precisely the same weaknesses as its argument about § 1229c(f). This case does not involve a "judgment regarding the granting" of voluntary departure. It involves a decision regarding the denial of a motion to

reopen. Moreover, § 1252(a)(2)(B)(i) is titled "Denials of *discretionary* relief." (emphasis added). It does not divest us of jurisdiction to review non-discretionary decisions like that at issue here. *Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1144 (9th Cir.2001).

Because we are not asked to review the discretionary denial or granting of voluntary departure, neither § 1229c(f) nor § 1252(a)(2)(B)(i) prevents us from exercising jurisdiction. We turn now to the merits to assess whether Zazueta–Carrillo was entitled to remain in the United States pending our review.

## III

■ Before we decide when the voluntary departure period begins to run, we first must decide whether our 1988 decision in *Contreras–Aragon* is still controlling. In *Contreras–Aragon*, we held that the voluntary departure period did not begin to run until after we issued our mandate. 852 F.2d at 1090. Stated another way, we held that an alien who was granted the privilege of voluntary departure was entitled to remain in the United States pending our review of his or her case. *Id.* Eight years after we decided *Contreras–Aragon*, Congress dramatically altered immigration law by enacting IIRIRA. IIRIRA so recast the statutory landscape that the rationale for *Contreras–Aragon* has been eliminated.

First, we relied on a jurisdictional argument. When we decided *Contreras–Aragon*, it was settled that we had jurisdiction to review the BIA's grants and denials of voluntary departure. We observed that the voluntary departure period should not commence until deliberation on that issue concluded:

> Our authority to review this discretionary relief is beyond challenge. In reviewing the grant, we are simply reviewing what is before us.... Naturally, the voluntary departure period commences when our mandate upholding the grant of voluntary departure issues.

*Contreras–Aragon*, 852 F.2d at 1093.

Although our authority under then-existing law to review those determinations was beyond challenge, it was not beyond repeal by Congress. IIRIRA abolished our authority to review discretionary grants and denials of voluntary departure. *See* 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from *denial of a request* for an order of voluntary departure.") (emphasis added); 8 U.S.C. § 1252(a)(2)(B)(i) ("no court shall have jurisdiction to review ... any judgment regarding *the granting of relief* under section ... 1229c [voluntary departure]") (emphasis added). Because we no longer review denials of voluntary departure, there is no longer any reason to delay the voluntary departure period pending our review of that issue.

The second reason for our holding in *Contreras–Aragon* was a concern that an alien might be forced to choose between exercising the privilege of voluntary departure and exercising the right of appellate review. *Contreras–Aragon*, 852 F.2d at 1093–95. Under pre-IIRIRA law, we lost jurisdiction to consider a petition for review whenever the petitioner left the United States.[4] We expressed concern that if the voluntary departure period seemed

4. Section 106(c) of the old Immigration and Nationality Act provided that courts could not review any order of deportation if the alien "ha[d] departed from the United States." *Contreras–Aragon*, 852 F.2d at 1091 n. 1. Furthermore, INS regulations stated that "[d]e-

parture from the United States of a person who is the subject [of] deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal." *Id.*

likely to expire before our review could be concluded (as it almost always would), an alien would face an unfair choice: leave the United States voluntarily (thereby abandoning his petition) or remain in the United States to pursue the petition (thereby violating the voluntary departure order). *See id.* We declined to sanction a policy that "effectively forced the alien to choose between exercising an award of voluntary departure and pursuing judicial relief." *Id.* at 1095.

After IIRIRA, aliens no longer face this dilemma. IIRIRA repealed the jurisdictional provision that concerned us in *Contreras–Aragon.* We now may entertain a petition after the alien has departed. *See* 8 U.S.C. § 1252(b)(3)(B) (replacing 8 U.S.C. § 1105a(c)). Congress's desire to expedite removal by voluntary assent now does not conflict with the alien's ability to pursue a petition for review. So the concern about fairness that motivated us in *Contreras–Aragon* has been alleviated.

A third rationale for our holding in *Contreras–Aragon* related to the then-existent six-month period within which an alien could seek judicial review. *See Contreras–Aragon,* 852 F.2d at 1095–96. Were an alien required to depart the United States soon after a BIA decision (e.g., within thirty days), the alien would be unable to petition this court for review during much of the six-month period Congress authorized for such petitions, because we would lose jurisdiction as soon as the alien departed. *Id.* "The effect of the policy," we observed, "is to shorten the statutory six-month period within which the alien may seek review." *Id.* at 1092 n. 1, 1096. No such effect exists after IIRI-

RA. Because an alien may petition us for review after he has voluntarily departed, there is no shortening of the statutory period within which the alien may seek judicial review.[5]

The fourth reason for our *Contreras–Aragon* holding was the pre-IIRIRA "automatic stay" provision. Under the law as it was then, an alien who was being deported was entitled to an automatic stay of deportation upon the filing of a petition for review. *Id.* at 1092. An alien who was granted voluntary departure was not entitled to an automatic stay upon filing. *Id.* We reasoned in *Contreras–Aragon* that Congress could not have intended to treat aliens being deported differently from aliens granted voluntary departure. *Id.* Since aliens being deported were entitled to remain in the United States pending review by this court, aliens granted voluntary departure must have the same right. *Id.*

After IIRIRA's revision of immigration law, this rationale no longer supports *Contreras–Aragon's* holding. Instead, it supports the opposite rule. IIRIRA eliminated automatic stays. The statute directs that "[s]ervice of the petition [for review of an order of removal] ... *does not* stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B) (emphasis added). Even if a petition for review is filed, IIRIRA permits the INS to remove aliens without delay after an unfavorable BIA decision, and it allows aliens to continue their cases from abroad. *Id.* If aliens being removed and aliens granted voluntary departure are to be treated similarly—a central concern

---

5. Under IIRIRA, the statutory period within which an alien may seek review has been shortened to thirty days. 8 U.S.C. § 1252(b)(1). Because Immigration Judges and the BIA are authorized to grant voluntary departure periods of up to 120 days or sixty days (depending on the posture of the case), and because other executive officers may grant extensions, the voluntary departure period now may far exceed the statutory review period.

in *Contreras–Aragon*—then aliens granted voluntary departure (like aliens being removed) should ordinarily leave the country when executive officers determine they must depart, and they may continue their cases from abroad.

In sum, we decided *Contreras–Aragon* in a different statutory context than exists today. Congress's enactment of IIRIRA changed the landscape of immigration law and alleviated all four concerns that motivated us in *Contreras–Aragon.* We therefore must reconsider the *Contreras–Aragon* holding in light of present-day immigration law. *See Landreth v. Comm'r,* 859 F.2d 643, 648 (9th Cir.1988). This is, of course, a specific application of the more general rule that we are not bound by decisions of prior panels if subsequent legislation has undermined those decisions. *United States v. Washington,* 872 F.2d 874, 880 (9th Cir.1989). *See also United States v. Gonzalez–Torres,* 309 F.3d 594, 599 (9th Cir.2002).[6] We thus assess the main issue in this case on a clean slate.

## IV

 Stated in the simplest of terms, after IIRIRA there is no reason to believe that the voluntary departure period begins after we finish our review. Petitioner proposes none. We see none. And we find none in any statute, regulation, or judicial decision. Most importantly, the Immigration and Nationality Act (as amended by IIRIRA) and its implementing regulations point in the other direction. The statute and regulations provide that the executive branch, rather than the courts, shall specify when aliens must depart voluntarily.

The Immigration and Nationality Act (as amended) provides that an alien faces penalties if the alien "fails voluntarily to depart the United States *within the time period specified."* 8 U.S.C. § 1229c(d) (emphasis added). The time period is "specified . . . *by an immigration judge or the Board."* 8 C.F.R. § 240.26(f) (2002) (emphasis added). Moreover, the statute states that *"[t]he Attorney General* may permit an alien voluntarily to depart the United States" and that *"the immigration judge* enters an order granting voluntary departure." 8 U.S.C. § 1229c(b)(1) (emphasis added). It is executive rather than judicial officers who decide when an alien must depart. Neither the statute nor the regulations give courts any designated role in this process of setting the deadline for departure. The new statute specifically limits the courts' role. *See* 8 U.S.C. § 1229c(f) and § 1252(a)(2)(B)(i).

Pursuant to these statutes and regulations, the BIA here specified a period during which Zazueta–Carrillo was required to depart. The BIA order stated, "the respondent[Zazueta-Carrillo] is permitted to voluntarily depart from the United States, without expense to the Government, *within 30 days from the date of this order* or any extension beyond that time as may be granted by the district director." (emphasis added). That order was entered July 20, 2001. Thus, the BIA—the entity charged by delegation from the Attorney General with specifying the time period during which Zazueta–Carrillo could voluntarily depart—specified the thirty-day period of July 20 to August 19, 2001. For us to specify in effect a differ-

---

6. In some cases involving only slight legislative changes, challenging questions will be presented concerning whether to depart from a prior precedent. *See, e.g., United States v. Gonzalez–Torres,* 309 F.3d 594 (9th Cir.2002) (examining whether statutory change of smuggling statute from "brings into" to

"brings to" the United States required departure from prior precedent). But given the vast and striking changes effected by IIRIRA, which vitiate or substantially eliminate all the reasons underlying *Contreras–Aragon, Contreras–Aragon* cannot control our decision here.

ent period starting more than a year later would contravene Congress's scheme and invade the executive branch's authority to specify a deadline for voluntary departure.

Such an approach also would encroach on the executive branch's authority to grant aliens extensions of time. The INS regulations state:

> Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is *only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs.*[7]

8 C.F.R. § 240.26(f) (2002) (emphasis added). Were we to hold that the voluntary departure period does not begin until after our review, it would have the effect of extending voluntary departure beyond the period specified by the executive officers. The regulations deny courts this power.

■ Basic principles of administrative law, including the *Chevron* doctrine, also require us to deny Zazueta–Carrillo's petition. The BIA has interpreted immigration law to mean that voluntary departure periods begin on the date the BIA enters its order. Here, the BIA specified that Zazueta–Carrillo had to depart "within 30 days *from the date of this order.*" (emphasis added). The BIA later determined that Zazueta–Carrillo's failure to depart within that thirty-day period violated the order. The BIA's interpretations and applications of the immigration laws are entitled to deference when Congress's intent is unclear. *INS v. Aguirre–Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (holding that "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adju-

dication") (internal quotation marks and citations omitted); *Socop–Gonzalez v. INS,* 272 F.3d 1176, 1187 (9th Cir.2001) (en banc). In this case, the Immigration and Nationality Act either (1) requires that the voluntary departure period commence when executive officers specify or (2) is unclear. Thus, the statute either supports the BIA's position, or the statute is unclear. And if the statute is unclear, the BIA's position is entitled to *Chevron* deference.

■ In addition to this general policy of respect for a coordinate branch of government, the specific policy underlying the voluntary departure procedure weighs heavily in favor of the earlier date. The purpose of voluntary departure is, after all, to encourage the alien to depart without further ado:

> The purpose of authorizing voluntary departure in lieu of deportation is to effect the alien's prompt departure without further trouble to the Service. Both the aliens and the Service benefit thereby. But if the alien does not depart promptly, so that the Service becomes involved in further and more costly procedures by his attempts to continue his illegal stay here, the original benefit to the Service is lost. And if, after years of delay, he is again rewarded with the opportunity for voluntary departure which he has previously spurned, what incentive is there for any alien similarly circumstanced to depart promptly when first given the opportunity?

*Ballenilla–Gonzalez v. INS,* 546 F.2d 515, 521 (2d Cir.1976). This policy concern has become more pressing after IIRIRA, in which Congress made clear its desire to expedite removal proceedings. If the voluntary departure period did not begin un-

---

7. It does not appear from the administrative record that Zazueta–Carrillo ever requested an extension of his voluntary departure period.

til after our review, aliens would not be encouraged to depart promptly. Worse yet, aliens would be encouraged to file frivolous petitions for review. An alien granted the privilege of voluntary departure could simply petition this court—however meritless his petition—and thereby gain many additional months (even years) in the United States, in open, judicially sanctioned defiance of the Immigration Judge or BIA's order. Congress, with its keen interest in facilitating prompt departures, could not have intended this result.

Finally (and ironically), the reasoning that supported our holding in *Contreras–Aragon* supports a different holding in a post-IIRIRA world. We reasoned in *Contreras–Aragon* that the voluntary departure period "[n]aturally" should commence the moment that deliberation on the merits of voluntary departure concluded. 852 F.2d at 1093. Before IIRIRA, that moment occurred when we issued our mandate. Now that IIRIRA has largely abolished judicial review of voluntary departure, that moment occurs when the Immigration Judge or BIA grants voluntary departure, and not later.

Because of the plain language of the immigration statute and its regulations, the respect owed the executive branch, and Congress's intent in authorizing the voluntary departure procedure, we hold that the voluntary departure period begins when an Immigration Judge or the BIA enters an order granting voluntary departure.[8]

## V

Our decision today makes clear that *Contreras–Aragon* is no longer the law of this circuit. At the time that Zazueta–Carrillo delayed his departure beyond the specified voluntary departure date, however, *Contreras–Aragon* still stood as the announced law of this circuit. Zazueta–Carrillo thus acted in the expectation that the pendency of his petition on the merits would result in the delay of the commencement of his period for voluntary departure. Under the Board's order, that reliance has cost him dearly.

When Zazueta–Carrillo moved the Board to reopen his proceeding, the Board denied reopening on the ground that Zazueta–Carrillo had not voluntarily departed within the period the Board had specified. But at the time, it does not appear that the Board was cognizant that Zazueta–Carrillo's petition to review his removal order was pending in this court. The Board therefore had no occasion to consider whether, in light of the fact that *Contreras–Aragon* was still on the books, Zazueta–Carrillo's period for voluntary departure should commence at a later time by reason of his pending petition in this court or by reason of the tempoprary stay of removal in place at the time he moved to apply for adjustment of status. *Cf. In re Chouliaris,* 16 I. & N. Dec. 168 (1977) (tolling running of time for voluntary departure set by Immigration Judge when appeal is taken to BIA).

In these circumstances, we deem it appropriate to vacate the order of the Board

---

**8.** Whether we have power to stay an alien's voluntary departure period while we review a removal order is not an issue in this case. Zazueta–Carrillo applied for a stay of removal while we considered his underlying claim for relief, and we denied it. Had Zazueta–Carrillo been granted a stay under the traditional standards for interim injunctive relief, *see Maharaj v. Ashcroft,* 295 F.3d 963, 966 (9th Cir. 2002) (defining these), and were the Attorney General then to challenge our power to delay

the start of the voluntary departure period, our analysis would shift to the scope of our equitable power, which is not at issue here. *Cf. Andreiu v. Ashcroft,* 253 F.3d 477 (9th Cir.2001) (en banc) (holding that IIRIRA does not bar us from staying removal orders pending resolution of petitions for review); *Maharaj,* 295 F.3d at 966 (holding similarly in the context of appeals from denials of habeas petitions).

denying the motion to reopen, and to remand to the Board for a reconsideration of that ruling.

**PETITION GRANTED. VACATED and REMANDED** for proceedings consistent with this opinion.

BERZON, Circuit Judge, concurring:

I concur in the opinion's analysis of our prior decision in *Contreras–Aragon v. INS*, 852 F.2d 1088 (9th Cir.1988) (en banc). Our holding in the present case is based on extensive changes to the Immigration and Nationality Act ("INA") brought about by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Of particular pertinence are the current absence of an automatic stay of removal in response to an alien's petition for judicial review and the critical consideration that leaving the country no longer voids an alien's petition.

I write separately, however, to emphasize my conviction that this court retains equitable jurisdiction to stay the availability of a voluntary departure period if the merits of an alien's underlying case justify a stay of his or her removal order. It is critical to the result in this case that the petitioner applied for and was denied a stay of removal. This court has thus determined that petitioner's merits petition was not strong enough to support a stay of removal. The only question presented, therefore, is whether petitioner's voluntary departure grant was automatically tolled, as it had been under *Contreras–Aragon*, simply because there was a petition for review pending in this court. I agree with the opinion's conclusion that automatic tolling no longer applies, at least absent an administrative decision otherwise.

Under IIRIRA and our post-IIRIRA case law, however, I think (1) that individuals in removal proceedings who petition this court for review and a stay of an order of removal should—if they meet the equitable standards for obtaining such a stay—be entitled to a stay of the availability of the ancillary benefit of voluntary departure; and (2) that the temporary stays we issue under *DeLeon v. INS*, 115 F.3d 643 (9th Cir.1997), should also stay the availability of voluntary departure pending determination of any stay motion concerning an alien's removal order.

*Contreras–Aragon* did not address the question of our equitable power to stay the availability of grants of voluntary departure if we affirmatively stay the order of removal, the "stick" to voluntary departure's "carrot." Voluntary departure is an alternative to mandatory removal. Once the removal order is stayed, the privilege of voluntary departure has no salutary function.

There is nothing in the statute or the applicable regulations precluding such a stay of the voluntary departure period as part of the interim relief granted when a stay of removal is appropriate. The time limit on periods of voluntary departure contained in 8 U.S.C. § 1229c(b)(2) does not refer to any starting or ending date. Rather, the statute simply prescribes that "[p]ermission to depart voluntarily ... shall not be valid for a period exceeding 60 days." Nor do the underlying regulations indicate when the period granted for voluntary departure is to begin or end, as opposed to the total time period within which the departure is to take place. *See* 8 C.F.R. § 240.26(e) ("If voluntary departure is granted at the conclusion of proceedings, the immigration judge may grant *a period* not to exceed 60 days." (emphasis added)).

Consequently, as far as the statute and regulations are concerned, some or all of a voluntary departure period could ensue after any decision by this court. If a stay of removal is issued before the period of voluntary departure expires, the permissible

total sixty-day period could be accommodated by tolling that period while a stay of removal is in place, without violating the statutory time limit. Such tolling makes sense, since the privilege of voluntary departure is ancillary to an order of removal, its purpose being to preclude the necessity for the INS affirmatively to remove someone. *See* 8 U.S.C. § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States *at the alien's own expense* ...." (emphasis added)).

The statutory preclusions on review of voluntary departure orders are carefully and narrowly worded, and do not preclude stays of *grants* of voluntary departure. 8 U.S.C. § 1229c(f) reads: "No court shall have jurisdiction over an appeal from *denial* of ... voluntary departure ... nor shall any court order a stay of an alien's *removal* pending consideration of any claim with respect to voluntary departure." (Emphasis added.) If voluntary departure is granted rather than denied, the first part of this section does not apply. The second part of § 1229c(f) only prohibits stays of removal pending consideration of voluntary departure claims, not the opposite, stays of granted periods of voluntary departure pending consideration of removal orders. That certain kinds of stays pertaining to voluntary departure orders are prohibited but not others is, under the case law interpreting IIRIRA, a strong indication that, except as limited by the statute, we retain our traditional equitable power to issue stays preserving the status quo. *See Andreiu v. Ashcroft*, 253 F.3d 477, 481–82 (9th Cir.2001) (en banc) (reading the term "enjoin" as not pertaining to stays, in part because there is another provision of IIRIRA pertaining to stays

that does not broadly prohibit them and "Congress knew very well how to use the term 'stay' when it wanted to"); *Maharaj v. Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002) ("the terms in section 1252(f) should be given their particular, precise meanings rather than interpreted more generally"); *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482, 487, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (reading § 1252(g) narrowly as limiting jurisdiction only with regard to certain, not all, acts of the Attorney General in the course of the removal process; "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

The other section of IIRIRA pertaining to review of voluntary departure grants is 8 U.S.C. § 1252(a)(2)(B)(i), denying courts jurisdiction to review "judgment[s] regarding the granting of relief under section 212(h), 212(i), 240A, 240B, or 245 ...." That section does not address the scope of our authority to issue stays when we do have jurisdiction to grant relief, as when there is an order of removal over which we have jurisdiction. Moreover, we have interpreted this section as not precluding jurisdiction over decisions concerning eligibility for relief, *Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1142–43 (9th Cir. 2001), another example of reading IIRIRA's limitations on judicial authority narrowly.

Given the absence of any statutory prohibition on stays of periods of voluntary departure once granted, the analyses underlying our decisions in *Andreiu* and *Maharaj* support the conclusion that we retain such authority in cases in which we otherwise have jurisdiction.[1] *Andreiu*

1. The *Andreiu* analysis has been adopted by two other circuits. *See Mohammed v. Reno*, 309 F.3d 95, 99 (2d Cir.2002); *Bejjani v. INS*, 271 F.3d 670, 687–89 (6th Cir.2001). *But see*

*Weng v. U.S. Attorney General*, 287 F.3d 1335, 1337–40 (11th Cir.2002) (disagreeing with *Andreiu* ).

held that we retain jurisdiction to stay removal orders under our ordinary equity powers, noting that to rule otherwise would mean, in asylum cases particularly, that "thousands ... who fled their native lands based on well-founded fears of persecution will be forced to return to that danger under the fiction that they will be safe while awaiting the slow wheels of American justice to grind to a halt." 253 F.3d at 484 (quoting *Andreiu v. Reno,* 223 F.3d 1111, 1127–28 (9th Cir.2000) (Thomas, J., dissenting)). *Andreiu* emphasized the particular danger facing a stay applicant "if it appears that the country of origin will not freely permit a return to the United States upon a grant of asylum." *Id.* Under such circumstances, a complete status quo injunction should include a stay of any period of voluntary departure granted. Otherwise, a petitioner who has an asylum claim sufficiently colorable to merit a stay of removal would not be restored to the status quo ante after this court's decision on the merits of his or her case.

Without our equitable authority to stay the availability of voluntary departure periods, at the time an alien is granted voluntary departure he or she would be faced with having to leave forthwith to preserve the benefits of voluntary departure, risking nonreturn in spite of a potentially meritorious case. The asylum-seeker would have to weigh the dangers of abuse in and/or confinement to the country in which the alien was allegedly persecuted against the penalties attached to forfeiting a grant of voluntary departure: a considerable fine and a 10–year prohibition on "any further relief under this section and sections 240A, 245, 248, and 249." 8 U.S.C. § 1229c(d).[2] An alien's departure in these circumstances could in effect void the asylum

appeal, because the alien might not be able to return to the United States if he or she successfully petitioned for relief through judicial review. This result cannot, in my view, be squared with *Andreiu.*

Aside from conflicting with *Andreiu,* the outcome would also be in considerable tension with *Maharaj. Maharaj* concerned this court's authority to issue a stay of removal pending consideration of an appeal from a habeas petition challenging a removal order. As *Maharaj* notes, 28 U.S.C. § 2349(b), incorporated in the INA by 8 U.S.C. § 1252(a)(1), generally permits courts to issue stays preserving the status quo pending determination of petitions for judicial review of agency action. *See Maharaj,* 295 F.3d at 965. The authority to "suspend the operation of the order of the agency," 28 U.S.C. § 2349(b), includes, in my view, the authority to enjoin the effective date of ancillary relief that is not itself under review.

Further, *Maharaj* assumed that there is no need for special authorization to grant stays pending proceedings in this court. The decision mentioned no such special authorization regarding habeas appeals generally, yet our traditional equitable authority to preserve our jurisdiction was held to permit such stays. *See* 295 F.3d at 966.

*Maharaj* also relied once more on the need to avoid absurd results, citing *Andreiu,* and noted "the need for unsuccessful asylum applicants to avoid removal pending review of their claims." *Id.* Again, the "need" for certain asylum applicants is not just to avoid removal in the abstract but to avoid going back to their countries of origin. If they do so, voluntarily or otherwise, as a practical matter

**2.** Under the post-IIRIRA voluntary departure regime, a bond of at least $500 must be posted within five days of the IJ's order. *See* 8 C.F.R. § 240.26(c)(3). The civil penalty for failure to depart during the period of voluntary departure is $1,000 to $5,000. *See* 8 U.S.C. § 1229c(d).

their appeals may be futile, as they may suffer the very consequences in their homelands that they sought to avoid by applying for asylum in the United States.

Finally, the fact that IIRIRA's language commits the voluntary departure decision to the executive branch does not limit our equitable authority to grant a stay of the voluntary departure period. The statutory language that discusses removal is just as unequivocal about executive primacy in making removal decisions, yet we stay these orders using our equitable authority all the time. *See* 8 U.S.C. § 1227(a) ("Any alien ... in and admitted to the United States shall, *upon the order of the Attorney General,* be removed if the alien is within one or more of the following classes of deportable aliens...." (emphasis added)).

The conclusion compelled by the statute and our case law is that this court's equitable power affirmatively to preserve the status quo pending review of a removal order—by granting a stay of both the removal order and the voluntary departure period until the alien's underlying claim is adjudicated was not disturbed by IIRIRA. It is with this understanding that I concur in the opinion.