

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2004

# Reynoso-Lopez v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 02-3278

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Reynoso-Lopez v. Atty Gen USA" (2004). *2004 Decisions*. Paper 646.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/646

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 02-3278
_____

DEMETRIO REYNOSO-LOPEZ,

Petitioner

v.

JOHN ASHCROFT, Attorney General of
the United States of America,

Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(INS No. A73-115-357)
_____

Submitted Under Third Circuit LAR
34.1(a) June 2, 2003

Before: BARRY, FUENTES, and
ROSENN, Circuit Judges.

(Filed: May 25, 2004)

Michael Morrone, Esq.
899 South College Mall Road
Suite 252
Bloomington, IN 27201

Counsel for Petitioner

John D. Williams, Esq.
Michael P. Lindemann, Esq.
Jocelyn L. Wright, Esq.
Erica A. Franklin, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

The principal issue presented by this appeal is whether this Court has the authority to reinstate a grant of voluntary departure and extend the departure date previously ordered by an Immigration Judge ("IJ") and affirmed by the Board of Immigration Appeals ("BIA"). In this case, the petitioner, Demetrio Reynoso-Lopez (hereinafter "Reynoso"), seeks review of the BIA's decision affirming the IJ's denial of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) and 1253(h), and protection under the Convention Against Torture ("CAT"). In the alternative, Reynoso asks us to reinstate the now expired thirty-day voluntary departure order granted to him by the IJ and reinstated by the BIA under 8 U.S.C. § 1229c(b)(1).

1

According to Reynoso, he failed to depart voluntarily because he wanted to stay in this country to appeal the BIA's decision of his request for asylum. He contends that, as a matter of due process, we have jurisdiction to reinstate the expired voluntary departure date in the event that we affirm the BIA's denial of his asylum claim. We disagree. Based on the plain language of the immigration statutes and regulations, which clearly grant the power to reinstate or extend voluntary departure solely to the Attorney General and his delegates at the Immigration and Naturalization Service ("INS"), we conclude that we lack the jurisdictional authority to reinstate or extend a voluntary departure order.

## I.

Reynoso is a twenty-seven year old native of Guatemala. He claims that when he was ten years old, he was held in confinement by Guatemalan guerrillas. He claims to have escaped to Mexico, where he lived for the next six years. In 1993, at the age of sixteen, Reynoso entered the United States without a visa.[1] On March 19, 1994, he applied for asylum, withholding of removal, and protection under the CAT. In the alternative, he requested voluntary departure. On October 19, 1998, the INS charged him with being removable for entering the United States without having been admitted or paroled.

In removal proceedings on January 28, 1999, Reynoso conceded removability and requested reconsideration of his previous petition for asylum. On January 20, 2000, the IJ denied all relief, but granted Reynoso voluntary departure until March 6, 2000. On July 23, 2002, the BIA affirmed the IJ without opinion. The BIA also granted Reynoso voluntary departure within thirty days of the date of its order.

Reynoso now appeals the decision of the BIA. He raises two primary issues on appeal: (1) whether the BIA erred in affirming the IJ's denial of his petition for asylum; and (2) whether this Court has the jurisdictional authority to reinstate an expired grant of voluntary departure.

We review the IJ's decision to grant or deny asylum for abuse of discretion. 8 U.S.C. § 1252(f)(4)(D). Thus, our review of the IJ's factual findings, which were adopted by the BIA, is deferential. Factual findings, such as credibility determinations, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We must establish whether the BIA's factual determinations are supported by substantial evidence. See Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998). This standard is "even more deferential" than the "clearly erroneous" standard, and requires us to sustain an adverse credibility determination "unless . . . no reasonable person" would have found the applicant incredible. See Concrete Pipe & Products

---

[1] Although the briefs describe him as a twenty-three year old (Pet. Br. at 2), if he was sixteen years old in 1993, he is approximately twenty-seven years old now.

of CA v. Construction Laborers Pension Trust for Southern CA, 508 U.S. 602, 623 (1993). "Adverse credibility findings are afforded substantial deference so long as the findings are supported by specific cogent reasons." Gao v. Ashcroft, 299 F.3d 266, 276 (3d Cir. 2002) (citation omitted).

## II.

In regard to Reynoso's appeal from the denial of his application for asylum, the IJ, after assessing Reynoso's credibility, determined that Reynoso "failed to establish a well-founded fear of persecution as is necessary in order to be statutorily eligible for asylum." Because Reynoso failed to establish eligibility for asylum, he necessarily failed to meet the more stringent standard for showing a "clear probability of persecution" to be eligible for withholding of deportation. INS v. Stevic, 467 U.S. 407, 420 n.13 (1984). Similarly, based on the respondent's testimony and the evidence of the record, he did not offer sufficient evidence for withholding of removal under the CAT. We have carefully reviewed the entire record and find no basis for disturbing the IJ's thorough and well-reasoned oral opinion. We add only the following to underscore our agreement with that decision.

At the hearing before the IJ, Reynoso testified that, at the age of 10, he and his family were captured by a band of guerillas in Guatemala and taken from their home town of Quilco to the guerillas'

encampment. He testified that about two weeks after his capture, the family, which apparently included both parents and two sisters, escaped the encampment. In the process, Reynoso became separated from his family and managed to walk for three days to Chiapas, Mexico, where he stayed and worked for three years. Thereafter, Reynoso moved to Mexico City, where he lived for another three years, working in a restaurant. At the age of 16, Reynoso left Mexico City and crossed into the United States.

Reynoso's parents, with whom he is in regular contact, now live in Cumil, Guatemala, a town approximately five hours from Quilco on foot. None of them knows the whereabouts of his younger sisters. Although formal resistance to the Guatemalan government has ended, Reynoso stated that he believes former guerillas are still active in Guatemala. He testified that, if he returned, he feared persecution by these guerillas for failing to join their resistance in 1987. The basis for this assertion was a list that he claimed the guerillas have kept which contains names of people whom they plan to target for retribution. He believed that both he and his father were on this list. He also stated that he had acquaintances who, after returning to Guatemala in 1997, were killed by former guerillas seeking revenge. In addition, Reynoso testified that his parents' crops had been destroyed, ostensibly by former guerillas.

In arriving at an adverse credibility finding, the IJ pointed to several deficiencies in Reynoso's testimony.

Specifically, the IJ found questionable Reynoso's testimony relating to (1) a "list" that the guerillas created in 1987; (2) his belief that guerillas are still active in Guatemala; (3) the guerillas' capture of the entire family, including his two younger sisters; and (4) his escape at the age of 10 and subsequent journey through Mexico and into the United States.

The IJ found this testimony incredible for several reasons. First, he doubted that Reynoso could have escaped the guerilla camp by himself on foot and then supported himself in Mexico from ages ten to sixteen. Second, he did not find that Reynoso's account provided a plausible basis for fearing a threat by former guerillas. Third, he took judicial notice of changed country conditions in Guatemala, finding that the guerillas had disbanded. Therefore, the IJ held that Reynoso had failed to show either past persecution or a well-founded fear of future persecution, as is required to establish statutory eligibility for asylum. Moreover, the IJ found that any harm Reynoso suffered was not "on account of" any of the five grounds enumerated by the INA (i.e., race, religion, nationality, membership in a particular social group, or political opinion). Instead, the guerillas mistreated his family in an attempt to recruit the family to join their rebellion. The IJ analyzed each of these areas of Reynoso's testimony and supplied specific reasons for his adverse credibility findings. In particular, the IJ found that Reynoso's testimony was exaggerated, embellished, and not particularly believable. The IJ accordingly concluded that Reynoso had not met his burden to establish a well-founded fear of persecution if returned to Guatemala.

We find no abuse of discretion in any of the IJ's credibility determinations. We accordingly conclude that substantial evidence supports the IJ's determination that Reynoso failed to support his asylum, withholding of deportation and CAT claims with credible evidence.

## III.

### A.

We now turn to the question of whether we can reinstate Reynoso's voluntary departure date. Under certain circumstances, the Attorney General will grant an alien voluntary departure as an alternative to deportation. This allows the alien to depart the United States at his or her own expense without being subject to the penalties and restrictions that deportation imposes. An alien who is deported may not reenter the United States for ten years unless the Attorney General permits it. However, an alien who departs voluntarily is not bound by this restriction and may reenter the United States once he or she has obtained proper documentation. See Ramsay v. INS, 14 F.3d 206, 211 n.7 (4th Cir. 1994). As an alternative to granting his petition for asylum, Reynoso requests that we extend the thirty-day voluntary departure order granted him by the IJ and reinstated by the BIA. Before his voluntary departure period had expired, Reynoso timely appealed to this Court. However, his departure period ended

4

before appellate review of his asylum application was completed.

Reynoso's request raises an issue of first impression in our Circuit: whether we have the authority to extend a voluntary departure order pending our review of a denial of a request for asylum. Several other courts of appeals have considered this question and are divided as to whether this authority exists under the current INS regulations. These regulations state that the "[a]uthority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs. . . ." 8 C.F.R. § 1240.26(f). The Government argues that we do not have jurisdiction to extend the voluntary departure period because the language of the regulation makes clear that the power to grant, extend or reinstate voluntary departure is within the sole authority of the Attorney General and his delegates at the INS and Executive Office for Immigration Review, which encompasses the IJs and the BIA. Resp. Br. at 28-30. Reynoso counters that due process requires that this Court have the power to extend voluntary departure, or else his decision to appeal the BIA's denial of his asylum application will have caused him to lose "the privilege of voluntary departure." Pet. Br. at 16 (quoting Matter of Villeagas-Aguirre, 13 I. & N. Dec. 139 (BIA 1969)). We hold that because Congress has not provided statutory authority for appellate courts to reinstate or extend the voluntary departure period prescribed by an IJ or the BIA, this Court lacks jurisdiction to reinstate Reynoso's voluntary departure period.

**B.**

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Under the plain language of the INA, as amended by IIRIRA, the authority to reinstate or extend voluntary departure falls solely within the discretion of the Attorney General and his delegates at the INS. These delegates, including the IJ and BIA, granted Reynoso a thirty-day voluntary departure period. Any extension of this time period would clearly conflict with the explicit language of IIRIRA, which provides that only the district director may determine the time period for voluntary departure.

The Immigration Regulations, as amended by IIRIRA, state:

Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs. An immigration judge or the Board may reinstate voluntary departure in a removal proceeding that has been reopened for a purpose other than solely making an application for voluntary departure if reopening was granted prior to

the expiration of the original period of voluntary departure.

8 C.F.R. § 1240.26(f) (emphasis added).

Therefore, under IIRIRA, the executive branch, not the judiciary, is given the sole authority to determine when an alien must depart. Further, IIRIRA specifically limits the role of the courts as to when an alien, under an order of voluntary departure, must leave the country. Id. For example, under 8 U.S.C. § 1229c(f), "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary

departure . . . , nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure." Additionally, "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief" under section 1229c. 8 U.S.C. § 1252(a)(2)(B)(i). Reynoso is not appealing a denial of a request for voluntary departure or a claim with respect to voluntary departure. Thus, these provisions do not divest this Court of jurisdiction in this case. However, they do underscore the fact that, in enacting IIRIRA, Congress intended to vest the right to set deadlines for an alien's voluntary departure solely with the executive branch, and not the courts. See Zazueta-Carrillo v. Ashcroft, 322 F.3d 1166, 1172 (9th Cir. 2003) ("Neither the statute nor the regulations give courts any

designated role in this process of setting the deadline for departure."). In granting the authority to set voluntary departure dates to the executive branch, it is fair to say that Congress intended the authority to be exclusive.

Our inability to grant Reynoso the relief he seeks does not leave him without a remedy. Under IIRIRA, Reynoso may apply for reinstatement or extension of voluntary departure directly to the district director. See 8 C.F.R. § 1244.2(f)(2); Castaneda, 23 F.3d at 1582. Seeking relief from the district director is, in fact, the procedure that Congress intended for a petitioner such as Reynoso to follow. Indeed, in this case, the BIA informed Reynoso that any extension of the voluntary departure time period "may be granted by the district director," thus putting him on notice that any relief from the voluntary departure set by the BIA would have to be granted administratively, not judicially. BIA Order at 2. Further, this statement by the BIA shows that the BIA has interpreted the INA as giving the district director sole authority to set and extend voluntary departure periods. Even if one were to argue that the statutory language were unclear, we would still be required to give deference to the BIA's interpretation of IIRIRA. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984); see also Zazueta-Carrillo, 322 F.3d at 1173 (same); see also Faddoul v. INS, 37 F.3d 185, 192, 191-93 (5th Cir. 1995) (stating that there was "[n]o reason to augment the administrative remedy which the alien had

6

neglected," and denying reinstatement of voluntary departure because the petitioner did not apply to the BIA or district director for an extension and waited until the last day of his departure period before filing his appeal (citing Farzad v. INS, 808 F.2d 1071, 1072 (5th Cir. 1987))); Alsheweikh v. INS 990 F.2d 1025, 1028 (8th Cir. 1993) (declining consideration of the petitioner's application for reinstatement of voluntarily departure, and stating that the petitioner "may request this relief from the INS").

Further, under IIRIRA, appellate courts retain jurisdiction to review an alien's appeal after he voluntarily departs. 8 U.C.C. § 1252(b)(3)(B). This remedy was not available in the pre-IIRIRA regime because, under the former INA, an appellate court lost jurisdiction once a petitioner left the country. See 8 U.S.C. § 1105a(c) (1994). Thus, before IIRIRA, an alien was forced to choose between exercising his right to appeal and taking advantage of voluntary departure. Because IIRIRA eliminates this concern, Reynoso was free to voluntarily depart and still pursue a petition for review, preserving his appellate rights. See Zazueta-Carrillo, 322 F.3d at 1171; Moore v. Ashcroft, 251 F.3d 919 (11th Cir. 2001); Tapia Garcia v. INS, 237 F.3d 1216 (10th Cir. 2001).

### C.

A number of circuits addressing the voluntary departure issue have similarly found that they lack jurisdiction to extend a voluntary departure order. In Nkacoang v. INS, the Eleventh Circuit stressed the fact that Congress has not empowered the courts of appeals to reinstate voluntary departure orders that have expired. 83 F.3d 353, 357 (11th Cir. 1996). The Court held that absent explicit Congressional empowerment to act, an appellate court lacks the jurisdictional authority to extend or reinstate voluntary departure. Similarly, in Castaneda v. INS, the Tenth Circuit held that it lacked the authority to review a request for reinstatement of a voluntary departure order, stating that "none of the pertinent statutes . . . provide any basis whatsoever for this court to assume authority for affording the discretionary, administrative relief sought by petitioner." 23 F.3d 1576, 1580 (10th Cir. 1994). The Tenth Circuit went on to reiterate that "[i]f an act can be performed by a [federal] court, it is because it was permitted and not because it was not prohibited by Congress. Federal courts operate only in the presence rather than the absence of statutory authority." Id. at 1580 (internal citation and quotations omitted).

In Kaczmarczyk v. INS, the Seventh Circuit affirmed an order of deportation and held that the Court lacked jurisdiction to reinstate or extend voluntary departure, thus requiring the alien to file a motion with the INS district director requesting reinstatement of voluntary departure. 933 F.2d 588, 598 (7th Cir. 1991), cert. denied, 502 U.S. 981 (1991). The Seventh Circuit did note its concern that the INS might use its discretionary authority to discourage petitioners from seeking judicial review. The Court stated that "[d]eportable aliens should not be

faced with the choice between enjoying the voluntary departure privilege and securing judicial review of Board determinations;" thus "[s]hould it come to our attention that the INS is wielding its discretion to withhold voluntary departure [in order] to deter applicants from seeking review of BIA decisions, our scrutiny of that discretionary exercise might expand." Id. (citation omitted). However, as discussed above, the passage of IIRIRA has eliminated this concern as aliens may now pursue their appeals from abroad, avoiding their having to choose between exercising their right to appeal and taking voluntary departure.

The Ninth Circuit also addressed this issue in Zazueta-Carrillo v. Ashcroft, in which it overruled its previous decision in Contreras-Aragon v. INS and held that, in light of IIRIRA, appellate courts lack authority to reinstate voluntary departure. 322 F.3d at 1172. In Contreras-Aragon v. INS, the Ninth Circuit had held that when an appeals court otherwise has jurisdiction over a final order of deportation it may reinstate a grant of voluntary departure originally entered by the IJ and BIA. 852 F.2d 1088, 1092-93 (9th Cir. 1988). After IIRIRA, however, the Ninth Circuit reconsidered its decision in Contreras-Aragon and concluded that a petitioner's voluntary departure period begins when an IJ or the BIA enters its order granting voluntary departure. See Zazueta-Carrillo, 322 F.3d at 1168. The Zazueta-Carrillo Court examined the rationales on which Contreras-Aragon relied, and concluded that these rationales were no longer valid

in the context of IIRIRA. Examining the relevant immigration statutes and regulations post-IIRIRA, the Ninth Circuit held that appellate courts lack the authority to extend the time period for voluntary departure, and that aliens granted voluntary departure must continue their appeals from abroad. Id.

While other circuits have taken the opposite stance, holding that they have authority to reinstate voluntary departure, these holdings predate IIRIRA. For example, the Fourth Circuit in Ramsay v. INS held that an appellate court should extend voluntary departure when (1) it finds that the INS has used its discretion to withhold voluntary departure in order to deter applicants from seeking judicial review of BIA decisions; and (2) the INS does not indicate that it will present the district director with any other reason for refusing reinstatement. 14 F.3d at 213 (internal quotation marks and citations omitted). Similarly, in Umanzor-Alvarado v. INS, the First Circuit held that it had the authority to extend voluntary departure when the INS offered no evidence suggesting that the alien had become ineligible for departure in the interim between the BIA's opinion and the appellate court's opinion. 896 F.2d 14, 16 (1st Cir. 1990); see also Aiyadurai v. INS, 683 F.2d 1195, 1201 (8th Cir. 1982) (restoring voluntary departure status despite the fact that this issue was not raised on appeal, and noting that the petitioner "qualified for voluntary status at the . . . deportation hearing and there is no indication in the record that she does not

continue to qualify").

The arguments presented by the Fourth and First Circuits, in pre-IIRIRA decisions, are unpersuasive in light of the plain language of the INA, as amended by IIRIRA. As discussed above, the Fourth Circuit's concern that the INS may use its discretion over voluntary departure in order to deter judicial review of BIA decisions was eliminated by IIRIRA's provision that appellate courts retain jurisdiction over an alien's appeal after he has departed the country.

In addition, both the Fourth and First Circuits conclude that there is no reason for an appellate court not to toll the initial departure period granted by an IJ or the BIA when the INS has offered no evidence to suggest that the alien had become ineligible for voluntary departure during the course of the appeal. See Ramsay v. INS, 14 F.3d at 213; Umanzor-Alvarado v. INS, 896 F.2d at 16. This approach, however, conflicts with the specific procedures provided for in the statute. Whether the relief sought by Reynoso in this appeal is characterized as a "reinstatement and extension" of the voluntary departure period or as a "tolling," the effect is the same. See Zazueta-Carrillo, 322 F.3d at 1176 (Berzon, J., concurring). The INA is clear that this type of relief may only be sought from the district director. Further, as the Tenth Circuit points out, the approach of the Ramsay and Umanzor-Alvarado Courts misplaces the burden of persuasion in a petition for extension of voluntary departure, as the INS does not bear the burden of showing an alien to be ineligible for voluntary departure. On the contrary, "it is the alien who bears the burden of proving statutory eligibility for this form of relief and demonstrating that it is warranted." Castaneda, 23 F.3d at 1582 (citing Rivera-Zurita v. INS, 946 F.2d 118, 120 (10th Cir. 1991) (internal quotations omitted)).

Finally, the policy considerations surrounding voluntary departure support our conclusion that Congress did not intend for appellate courts to have authority to extend voluntary departure orders. These considerations were stated by the Ninth Circuit as follows:

> The purpose of authorizing voluntary departure in lieu of deportation is to effect the alien's prompt departure without further trouble to the Service. Both the aliens and the Service benefit thereby. But if the alien does not depart promptly, so that the Service becomes involved in further and more costly procedures by his attempts to continue his illegal stay here, the original benefit to the Service is lost. And if, after years of delay, he is again rewarded with the opportunity for voluntary departure which he has previously spurned, what incentive is there for any alien similarly circumstanced to depart promptly when first given the opportunity?

9

See Zazueta-Carrillo, 322 F.3d at 1173 (quoting Ballenilla-Gonzalez v. INS, 546 F.2d 515, 521 (2d Cir. 1976)). If voluntary departure periods could be extended until after the completion of an appeal, it would discourage prompt departure and even encourage frivolous appeals in an attempt to continue extending an alien's departure date. Id. at 1173-74. This result would conflict with the INS' goal of having expeditious removal proceedings. This goal underlies voluntary departure, and is reflected in the clear procedures for extending voluntary departure set out by Congress in IIRIRA.

## IV.

The BIA's order affirming the IJ's denial of Reynoso's application for asylum, withholding of removal, and protection under the Convention Against Torture is affirmed. Under the INA, we lack jurisdiction to reinstate the IJ's grant of voluntary departure and to extend Reynoso's date for departure.