

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-2006

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2645

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Chen v. Atty Gen USA" (2006). *2006 Decisions.* Paper 675.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/675

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-2645

———

HE YONG CHEN,
                              Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                              Respondent

———

Petition for Review of the Order
of the Board of Immigration Appeals
(A97-160-271)
Immigration Judge: Hon. Henry S. Dogin

———

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2006

Before: SLOVITER, McKEE, and RENDELL, Circuit Judges

(Filed: July 31, 2006)

———

OPINION

SLOVITER, Circuit Judge.

## I.

Petitioner, He Yong Chen, is a thirty-four-year-old native and citizen of China who entered the United States via Mexico without inspection. Chen conceded removability before an Immigration Judge (IJ) and applied for asylum and withholding of removal.[1]

In his asylum application and in his testimony before the IJ, Chen claimed past persecution and a well-founded fear of future persecution on account of his practice of his Catholic faith. According to Chen, his parents were Catholic, although Chen was not baptized in childhood because of a government ban on religious activities. Rather than join a state-sanctioned "Patriotic Catholic Church," Chen's parents joined a so-called "house church," which was an unregistered church where the family could not openly practice mass or other religious activities. App. at 509. Chen's uncle is the head, or at least one of the leaders, of the church Chen attended, which is located in his home village of Liang Ci Diean, Fujian Province.[2]

According to his asylum application, Chen and his future wife, also a Roman

_____

[1] It is unclear whether Chen sought relief under the United Nations Convention Against Torture ("CAT"). The IJ considered and rejected the CAT claim.

[2] On his Chinese Resident ID Card, Chen's full address is listed as "90 Qiong Qi Dian, Dong du village, Yu Tian Town, Chang Le County, Fu Jian Province." App. at 480. The spelling of his village name as "Liang Ci Diean" was presented at the hearing before the IJ, and thus we use that spelling for purposes of this opinion.

Catholic, enrolled in a one-month pre-marriage class at the underground church in October 1996. On November 16, 1996, Chen, his future wife, and at least ten other individuals attended the class, which Chen portrayed in his testimony before the IJ as a Bible study session. Local police allegedly raided the gathering, declared it illegal because there were too many participants, and advised that Bible study must be conducted in a state-affiliated or registered church. The police arrested Chen and four other participants and detained Chen for one week. Chen does not claim that he was mistreated during that week but stated that he was interrogated and released after promising not to participate in similar activities in the future. Shortly thereafter, in January 1997, a priest baptized Chen and performed the marriage ceremony for Chen and his wife.

Chen testified that from November 1996 until July 2002, he regularly attended weekly mass at a Catholic church in the village of Yong Jo, which Chen estimated to be several thousand kilometers from Liang Ci Diean. Chen was unsure whether the church he allegedly attended was registered or underground. He does not claim that he suffered any act of religious persecution while he was in Yong Jo.[3]

In July 2002, Chen purportedly attended a confirmation class at an underground

_____

[3]We note that Chen made no mention in his asylum application of either living or attending church in Yong Jo. Rather, he seemed to indicate that he continued to attend his local house church. See App. at 509 ("Even though I got detained in 1996, I was still going to the house church secretly."). Chen's wife offered a similar account. See App. at 421 ("In [19]96, even [though] my husband had been detained, we still joined the house church secretly.").

church, which was in his home village of Liang Ci Diean but apparently at a different church than the one where the 1996 incident occurred. The police raided the confirmation class, and in the ensuing confusion, Chen fled and sought refuge at his mother-in-law's home in a different village. Chen called his wife after the raid and learned that the police had arrested four people, including the nun who taught the class. Chen returned home to Liang Ci Diean that evening but departed for the United States the next day; he claimed that he feared the authorities would discover that he had attended the class and would punish him severely because of the record of his previous arrest. Chen's wife and the couple's only child, a boy, remain in China.

Chen also testified that after the birth of his son in 2000 government officials required his wife to undergo the insertion of an IUD as part of China's family planning policy. Chen stated that he opposes birth control on religious grounds and wants to have more children. Chen did not assert a claim for asylum based on political opposition to the family planning policies; rather, he testified regarding his wife's IUD to support his claimed fear of religious persecution.

The IJ denied the applications for relief on the ground that Chen's testimony lacked credibility. The IJ determined that "the whole case has been manufactured." App. at 40. The IJ concluded that Chen had only a superficial knowledge of Catholicism, that there were inconsistencies between Chen's testimony and the documentary evidence he produced and that Chen's testimony itself was incredible. The BIA summarily affirmed and Chen timely filed his petition for review.

4

## II.

This court has jurisdiction under 8 U.S.C. § 1252(a)(1). Because the BIA affirmed without any independent analysis, our review is of the IJ's decision. Khan v. Att'y Gen., 448 F.3d 226, 233 (3d Cir. 2006). The IJ's credibility determination is reviewed under the substantial evidence standard. Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d Cir. 2003). This court must accept the finding as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). An adverse credibility determination is entitled to deference "'so long as [it is] supported by sufficient cogent reasons.'" Butt v. Gonzales, 429 F.3d 430, 434 (3d Cir. 2005) (quoting Reynoso-Lopez v. Ashcroft, 369 F.3d 275, 278 (3d Cir. 2004)).

We agree with the government that the IJ offered sufficient reasons to support the adverse credibility determination. The IJ found that Chen gave facially implausible testimony in claiming that he attended church in Yong Jo without knowing whether that church was registered.[4] We note that there is evidence of record suggesting that the line between registered and unregistered Catholic churches can sometimes be blurred in southeastern China. See App. at 150 (2002 State Department Country Report). Nevertheless, Chen claims that he fled his home village on account of police persecution for having attended an unregistered church. The IJ thus rightly questioned the credibility

---

[4] The IJ did not comment on the credibility of Chen's claim that he regularly attended the church in Yong Jo purportedly several thousand kilometers away. We question the accuracy of the translation in that respect.

5

of Chen's testimony that he thereafter attended a new church, for a period of six years, with no knowledge of whether it was registered. Given Chen's alleged past history with the police, it was not unreasonable for the IJ to have expected that Chen would know the registration status of the church in Yong Jo, or at least have adequately explained why that status is a fact he could not be expected to know.

The IJ also observed that Chen lacked basic knowledge about his professed religion. Chen testified that he had no knowledge that Peter, one of Christ's twelve apostles, is a central figure in Roman Catholicism. Chen testified that "[t]here is no, in Catholicism there's no Peter, but in the Protestant that they have Peter." App. at 106. Chen premised his asylum claim upon his purported devotion to Roman Catholicism, which he claimed was his parents' religion and one that he has practiced since childhood at a church where his uncle is a leader. In this light, the IJ had well-founded skepticism about Chen's credibility after hearing testimony that there was "no Peter" in Catholicism. While the IJ could not have expected that Chen, a farmer with a grade-school education, would display the knowledge of a Vatican scholar, it was not unreasonable to expect that Chen would be able to identify a central figure in his professed religion. We note that Chen presented no testimony or other evidence indicating that it would be unreasonable to expect that he have heard of Peter.

The IJ also noted various contradictions in Chen's documentary evidence. Among other things, Chen submitted a baptisal certificate from his church in China, but the IJ

6

found that document unhelpful because it was created after Chen had come to the United States and was in removal proceedings. In addition, the baptismal certificate states that Chen received the sacraments of confession, Holy Eucharist, and marriage, but Chen testified that he did not receive the sacrament of confession. He later changed his testimony and stated that he did in fact receive confession, but the IJ was entitled to question the consistency of Chen's testimony. One of the documents Chen submitted as corroboration was a form letter from St. Joseph's Church in New York purportedly signed by a priest that states that Chen is "an active member of our parish" and "participates in the weekly celebration of the Eucharist and attends numerous seminars on the Catholic Faith." App. at 429. Chen testified he did not attend any classes or seminars. The letter was never authenticated.

On this record, which includes both testimony and documentary evidence of a questionable nature, we hold that the IJ's adverse credibility determination is supported by substantial evidence. As noted, Chen did not raise a claim to asylum based on opposition to China's family planning policy. Thus, although Chen testified that his wife had an IUD inserted – testimony which the IJ accepted – the IJ had reason to rejected asylum on this ground in light of the lack of credibility to Chen's testimony regarding his religious beliefs. Finally, because the asylum claim was properly denied, the claim to withholding of removal must fail, as well. See Wang v. Gonzales, 405 F.3d 134, 144 (3d Cir. 2005).

7

## III.

For the reasons stated, we will deny the petition for review.