

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-23-2008

# Gutierrez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3703

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gutierrez v. Atty Gen USA" (2008). *2008 Decisions.* Paper 498.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/498

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3703

HERNANDO GUTIERREZ,
                              Petitioner,
v.

ATTORNEY GENERAL OF THE UNITED STATES

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A97-669-307
Immigration Judge: Annie S. Garcy

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 10, 2008

Before: AMBRO, FISHER and JORDAN, Circuit Judges

Opinion filed: September 23, 2008

OPINION

PER CURIAM

    Petitioner Hernando Gutierrez, a native and citizen of Columbia, was denied

admission to the United States on or about December 22, 2003 and detained.[1]  On

_____

    [1] Gutierrez attempted to gain admission by presenting a "photo substituted" visa and
passport at Miami International Airport.

December 30, 2003, he was served with a Notice To Appear for removal proceedings, alleging that he was removable under Immigration & Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 (a)(7)(A)(i)(I), as an alien who at the time of attempted admission was without valid entry documents.[2]  He admitted the essential facts and the charge was sustained.  A United States Citizenship and Immigration Services ("USCIS") asylum officer interviewed Gutierrez and determined that he had a credible fear of persecution.  Gutierrez was paroled into the United States, and, at his request, venue was transferred to Newark, New Jersey, where his uncle lives.

On April 8, 2004, Gutierrez filed his Form I-589 application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for relief under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of membership in a particular social group, that is, on account of his former service in the Columbian military.  He explained his claim in his asylum application as follows:

> As part of my military service, I was a Military Police from 12/05/1996 to 12/05/1997.  In 1997, I was part of a group that raided a bar in Barranquilla and confiscated weapons from the guerrillas.  In March 1999, they came to my mother's house and started shooting.  On April 12 of the same year, they sent me a note stating that I was the first on being targeted for having confiscated the weapons at the bar.  There was another shooting incident after that at my mother's house targeting my brothers and sisters.

---

[2] Gutierrez was charged as removable under another provision of the INA as well.

2

A.R. 213.  Gutierrez stated in the application that he was afraid of the urban guerrillas that form a part of FARC, the Revolutionary Armed Forces of Columbia.  Two other soldiers who participated in the raid on the bar were persecuted by FARC and "disappeared."  Id.

Gutierrez was the sole witness at his removal hearing on March 9, 2006.  He testified about a May 1997 military raid on a bar in Barranquilla and the arrest of the proprietor and employees who were suspected FARC members.  He noted that soldiers wear name tags and "Gutierrez" was displayed on his uniform.  He then also testified about the subsequent attacks on his mother's home, and the dates of his military service, and in doing so he exhibited some confusion about the chronology of events, which he then attempted to clear up.  Additionally, he testified that the FARC completely destroyed his stepfather's store.  When asked how he knew FARC was responsible for shooting at his mother's house and destroying his stepfather's store, he replied that they had left a message on the wall after the first attack on his mother's house in March 1999.  A.R. 140. Gutierrez testified that his mother filed a police report after the April 1999 incident but the police took no action.  On cross-examination, Gutierrez stated that he did not ask his mother to corroborate this event, because it did not occur to him to do so.  A.R. 133.  He also testified that he simply lost contact with the two other soldiers who participated in the raid.  A.R. 144.

Gutierrez testified that, after the attacks on his mother's house, he moved to

3

Malambo, a town in Barranquilla, A.R. 127, and obtained a job as a security guard from 1999-2003. The FARC did not bother him in Malambo, because they did not know he was there; he disguised himself by shaving his mustache and wearing a cap and glasses. Gutierrez gave conflicting testimony about contact with his mother. Initially, he testified that his mother and three sisters live in Columbia and have not had trouble. When cross-examined about his lack of corroborating evidence, however, he testified that he is unable to speak with his mother because the FARC intercepts telephone calls. A.R. 124. However, he also seemed to indicate that he provides financial support to his mother and sisters in Columbia. A.R. 125.

The Immigration Judge denied relief. She noted Gutierrez' difficulty remembering the exact dates of important events, such as the date of his unit's raid on FARC's bar, the dates of the attacks on his mother's house, and the date he received FARC's note. She noted inconsistencies between his asylum application and his testimony, for example, he did not mention the destruction of his stepfather's store in his asylum application. Considering that his family had the ability to corroborate his testimony, it was damaging to his case that they had not, and Gutierrez' reasons for failing to seek corroboration were unconvincing. The IJ thought Gutierrez' nervous demeanor was an indication he was not telling the truth. She noted that the government's cross-examination revealed, not that Gutierrez had knowledge that the other soldiers had been persecuted, but that he had lost touch with them and suspected the worst.

4

Accordingly, the IJ determined that Gutierrez failed to credibly establish past persecution. As to whether he had a well-founded fear of future persecution, the IJ again noted that he lived, worked, and studied in safety in places other than his mother's town after 1999. She noted that he was able to safely relocate in the town of Malambo, and that he did not have an adequate explanation for why he waited several years after the alleged attacks to leave Columbia. Finally, assuming the truth of his assertions, the IJ expressed doubt about whether he was persecuted on account of a protected ground. Because Gutierrez was not eligible for asylum, he was ineligible for withholding of removal, and the IJ further denied as meritless his request for relief under the Torture Convention. Gutierrez was ordered removed to Columbia.

On August 14, 2007, the Board of Immigration Appeals dismissed the appeal. The Board upheld the IJ's adverse credibility determination as not clearly erroneous, see Gao v. Ashcroft, 299 F.3d 266, 275 (3d Cir. 2002), and it rejected Gutierrez' assertion that the IJ was biased. The Board held that the IJ's observations and conduct surrounding the hearing did not deprive him of a fair hearing nor were they evidence of bias. In addition, the Board held that the IJ correctly determined the issue with respect to internal relocation. The Board further held in support of the IJ's decision that the alleged injuries were not tied to a protected ground. Therefore, Gutierrez was not eligible for asylum or withholding of removal. He also did not show that it was more likely than not that he would be tortured if returned to Columbia and therefore he was not eligible for CAT

5

protection. Gutierrez has timely petitioned for review

We will deny the petition. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). Where the Board renders an opinion that sets forth grounds of decision independent of those relied on by the IJ, we review only the Board's decision, see Xie v. Ashcroft, 359 F.3d 239, 240 (3d Cir. 2004), but where, as here, the Board adopted the IJ's reasoning explicitly or implicitly in disposing of the contentions on appeal, we review the IJ's opinion as well, id. at 242. Factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Whether an applicant for asylum has demonstrated past persecution or a well-founded fear of persecution is a factual question which is reviewed under the substantial evidence standard. See Gao, 299 F.3d at 272. A petitioner's due process claim is reviewed de novo. See Abdulrahman v. Ashcroft, 330 F.3d 587, 595-96 (3d Cir. 2003).

We review an adverse credibility determination under the substantial evidence standard. Xie, 359 F.3d at 242. Under this deferential standard of review, we must uphold the credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We thus are required to sustain an adverse credibility determination "unless no reasonable person would have found the applicant incredible." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004)

6

(internal quotations and citation omitted).  This standard of review is even more deferential than the "clearly erroneous" standard.  See Reynoso-Lopez v. Ashcroft, 369 F.3d 275, 278 (3d Cir. 2004).  "Generally, minor inconsistencies and minor omissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding," Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004) (internal quotations and citations omitted), but we uphold adverse credibility determinations based on omissions and discrepancies that go to the heart of a petitioner's claim.  Chen, 376 F.3d at 224.[3]

An applicant for asylum has the burden of establishing that he is unable or unwilling to return to his home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]"  8 U.S.C. § 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a); Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001).  The alien bears the burden of proof.  Id.  To establish eligibility on the basis of past persecution, an alien must show that he suffered some harm rising to the level of persecution on account of a statutorily protected ground, and that it was committed by the government or forces the

---

[3] Under the REAL ID Act of 2005, credibility determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim."  Pub. L. No. 109-13, § 101(a)(3)(B)(iii), 119 Stat. 231, 303 (2005).  However, this provision of the REAL ID Act applies only to cases where the applicant applied for asylum or other relief after May 11, 2005.  See id. § 101(h)(2), 119 Stat. at 305.  Because Gutierrez applied for asylum in 2004, our pre-REAL ID Act standard applies.

government is unable or unwilling to control. Gao, 299 F.3d at 272. An alien who establishes past persecution enjoys a presumption of a well-founded fear of future persecution, Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003), but, if the alien cannot credibly show past persecution, he may still establish a well-founded fear of future persecution by demonstrating a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).

The standard for withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." The standard is more exacting than the asylum standard and requires the alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). To establish a basis for relief under the Convention Against Torture, the alien must establish that it is more likely than not that he or she would be tortured if returned to the country of removal. 8 C.F.R. § 1208.16(c)(2). Torture is defined as "an extreme form of cruel and inhuman treatment

8

and does not include lesser forms of cruel, inhuman or degrading treatment or punishment...." 8 C.F.R. § 1208.18(a)(2).

The IJ properly based her credibility finding on inconsistencies concerning essential aspects of Gutierrez' claim, including the dates of FARC's alleged attacks on his mother's home, and whether FARC posted a threatening message following its first or second attack. The adverse credibility determination also was supported by Gutierrez' failure to mention the destruction of his stepfather's store in his asylum application. See In re: A-S-, 21 I. & N. Dec. 1106, 1110 (BIA 1998) (omission of key events coupled with numerous inconsistencies provides specific and cogent reason to support adverse credibility determination). Gutierrez failed to explain adequately the inconsistencies and omission, and, contrary to his assertions in his brief, the inconsistencies and omission were not minor. The IJ also properly observed that Gutierrez made a number of inconsistent statements while failing to corroborate his claims. The corroborating evidence she sought from him – the police report his mother filed or supporting statements from his family members still in Columbia – was material and available, and Gutierrez did not make reasonable efforts to obtain it. See Abdulai v. Ashcroft, 239 F.3d 542, 551 (3d Cir. 2001).

We have been at times skeptical of credibility determinations based on a petitioner's demeanor, see, e.g., Fiadjoe v. U.S. Attorney General, 411 F.3d 135, 154 (3d Cir. 2005) (when alien must testify about highly sensitive and personal subject), but here

9

we are in agreement with the Board that the IJ made a valid observation about the possible reason for Gutierrez' stated nervousness. We further reject Gutierrez' assertion of a due process violation. The IJ did not demonstrate bias or express inappropriate extrajudicial views, see generally Sukwanputra v. Gonzales, 434 F.3d 627, 637-38 (3d Cir. 2006), nor did she interfere with Gutierrez' ability to fully present his case. The Board correctly determined that a remand was unwarranted.

In sum, the record does not compel reversal of the IJ's adverse credibility determination. 8 U.S.C. § 1252(b)(4)(B); Chen v. Ashcroft, 376 F.3d at 222. Gutierrez did not credibly establish past persecution, and even assuming that he has protected status under the INA,[4] he did not establish a well-founded fear of future persecution in that he did not establish that he could not successfully relocate to another part of the country. Abdille, 242 F.3d at 496; 8 C.F.R § 1208.13(b)(2)(ii). He admitted that he was able to successfully relocate to Malambo and avoid further trouble with FARC for several years before he decided to come to the United States. Because Gutierrez failed to establish eligibility for asylum, he necessarily failed to establish eligibility for withholding of removal. Lukwago, 329 F.3d at 182. In addition, the Board concluded that Gutierrez did not meet his burden of establishing that it is more likely than not that he will be tortured

---

[4] Gutierrez has argued that, as a former member of the Columbian military, he merits protection as a member of a particular social group, see In re: Fuentes, 19 I. & N. Dec. 658 (BIA 1988) (drawing distinction between current and former members of national police and holding that latter group may assert asylum claim based on imputed political opinion or membership in particular social group).

10

upon his return to Columbia, 8 C.F.R. §§ 1208.16, 1208.18, and we conclude that the record does not compel a different conclusion.

For the foregoing reasons, we will deny the petition for review.