NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2880
_____

HUA JIN,
                    Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A099-669-540)
Immigration Judge: Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 5, 2011

Before: AMBRO and FISHER, *Circuit Judges*, and SÁNCHEZ,[*] *District Judge.*

(Filed: January 19, 2011)
_____

OPINION OF THE COURT
_____

---

[*]The Honorable Juan R. Sánchez, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

Hua Jin seeks review of an order of the Board of Immigration Appeals ("BIA"), which dismissed her appeal from an immigration judge's ("IJ") final removal order. For the reasons stated below, we will deny the petition for review.

**I.**

We write for the parties, who are familiar with the factual context and legal history of this petition. Therefore, we will set forth only those facts necessary to our analysis.

On June 2, 2006, the Department of Homeland Security initiated removal proceedings in immigration court in Newark, New Jersey. On November 8, 2006, Jin filed an asylum application with the immigration court. The judge denied her application for asylum, withholding of removal, and Convention Against Torture protection based on a finding that Jin's testimony lacked credibility.

Jin applied for asylum out of fear that she would be arrested in China due to accusations that she harbored North Korean escapees. In her asylum application and testimony, Jin relayed the following account. She was approached by two children and a North Korean woman and took the three into her home, providing food and shelter for three days. The North Korean woman stated that she needed to proceed to Beijing to meet other North Koreans. Jin and her mother gave the woman 500 yen, and Jin provided the woman with her phone number, which she wrote down in a book. The woman telephoned Jin in February 2006, informing her that she was with other North

2

Koreans in Beijing and that she was about to do "something very important" that would "change their fates." (App. at 263.) She did not tell Jin what she meant. Two days later, Jin learned from Chinese Central Television that North Koreans attempted to break into a Western school attached to an embassy in Beijing. Some of them successfully entered, while others were intercepted and detained by Chinese military personnel.

Jin later received a call from Chang Jhu Hong, her brother's friend, who was an employee in the Helong City Public Security Bureau. Hong told her that he received a fax from the Foreign Affairs Ministry of China stating that it was investigating the break-in and that it discovered a Helong City telephone number written in a book taken from one of the detained North Korean women. Jin then called her mother, who stated that she felt that Jin was in imminent danger. Jin also stated that her mother told the police that Jin was the cause of the problem. After hearing this, Jin went into hiding.

While in hiding, Jin called her mother, who told her that the police had been to their home and inquired about her whereabouts. Jin stated that the police told her mother that they had reason to believe that Jin was involved or used by an "overseas anti-communist organization to hide and protect those North Korean people who were trying to break into the school for the children whose parents worked in the embassy." (*Id*. at 107.) Jin felt that she was no longer safe, and she went to Beijing to make arrangements to leave for the United States. She left on April 16, 2006.

3

Seven months later, in a New Jersey immigration court, Jin filed an application for asylum, withholding of removal, and Convention Against Torture protection. The IJ denied relief based on a finding that her testimony was not credible. Specifically, the IJ noted that Jin's claims about her mother's encounter with the police were inconsistent with the statement provided by her mother. Second, Jin's testimony that the police had come to her home with a warrant for her arrest was inconsistent with her and her mother's statements, neither of which mentioned a warrant. Third, Jin indicated in her testimony that the police came to her home three times. But Jin was unable to state the dates of two of the visits, her mother's letter only mentioned one visit on March 10, 2006, and Jin's asylum application did not mention any subsequent police visits. Finally, Jin indicated that the police wanted to arrest her because the police believed that she was an "organizer" of the North Korean refugees, but her mother's letter did not support Jin's claim.

The IJ denied her application based on findings that Jin's testimony was inconsistent and that there were "very serious omissions throughout the claim." (*Id*. at 79.) The IJ held that she was therefore not eligible for asylum or withholding of removal. The IJ also held that Jin failed to demonstrate that it was more likely than not that she would be tortured if returned to China and, therefore, denied her application for Convention Against Torture protection.

4

Jin appealed to the BIA, which found no clear error in the IJ's adverse credibility determination. The BIA rested its decision upon a finding of key omissions from Jin's mother's letter, which failed to mention that the police provided any reasons to arrest Jin, that the police had a warrant to arrest Jin, or that her mother told the police that Jin was responsible for harboring North Korean refugees. The BIA mentioned that the asylum application did not refer to subsequent police visits to her home and that Jin was unable to testify as to when these visits occurred. Jin also failed to show that the harm she fears "bears a nexus to a statutorily protected ground." (*Id*. at 4.) The BIA held that Jin was not eligible for asylum or withholding from removal and denied her application for Convention Against Torture protection.

Jin now petitions to review the BIA's final order for removal.[1] We review legal conclusions de novo, *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 405 (3d Cir. 2003), and uphold factual determinations, including adverse credibility findings, if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004).

---

[1] The Board of Immigration Appeals properly exercised jurisdiction under 8 C.F.R. §§ 1003.1(b)(3), 1240.15, which grant the BIA appellate jurisdiction over decisions of immigration judges in removal proceedings. We have jurisdiction over this appeal pursuant to 8 U.S.C. § 1252(a)(1).

## II.

Jin challenges the BIA's decision holding that she is not eligible for asylum and withholding of removal.[2] The BIA rested its decision upon a finding that Jin was not a credible witness and that she failed to corroborate her claims.

To qualify for asylum, an applicant must establish that she is a refugee, defined as a person who is unable or unwilling to return to her native country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 101(a)(42), 1101(a)(42)(A). In seeking withholding of removal, an alien must demonstrate "by clear probability" that, upon return to her home country, she will be persecuted on account of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1208.16(b). The standard for obtaining withholding of removal is more demanding than obtaining asylum. *See Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 348-49 (3d Cir. 2008); *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).

An adverse credibility determination can be based on inconsistencies, inaccuracies, or falsehoods in a witness's testimony and need *not* "go[] to the heart of the

---

[2] Jin waived her opportunity to challenge the BIA's denial of her Convention Against Torture application by failing to advance any arguments challenging the BIA's decision. *See Ghana v. Holland*, 226 F.3d 175, 180 (3d Cir. 2000). But even if one reads her brief as making such an argument, Jin's challenge would fail for the reasons stated below.

applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir. 2007). In reviewing a credibility determination, we exercise deference. "[W]e are required to sustain an adverse credibility determination 'unless . . . no reasonable person' would have found the applicant incredible." *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004) (citation omitted).

We find that the adverse credibility determinations made by the IJ that were relied upon by the BIA in reaching its conclusion rest upon substantial evidence.[3] The IJ noted discrepancies between Jin's testimony and the evidence she submitted. Jin testified that the police came to her house with a warrant for her arrest because they believed she was the organizer of the North Korean refugee group that broke into the embassy school. But her asylum application failed to mention an arrest warrant and failed to indicate that the police believed she was tied to the organizers of the break-in. Furthermore, her mother's letter failed to mention an arrest warrant or the police motive in seeking to contact Jin. Jin also only mentioned one visit by the police in her asylum application, though she

---

[3] We generally limit review to final decisions of the BIA. *Li v. Att'y Gen.*, 400 F.3d 157, 162 (3d Cir. 2005). However, in instances where the BIA defers to the IJ or invokes aspects of the IJ's analysis and fact-finding in support of its conclusion, we have reviewed both the IJ and the BIA decisions. *See Voci v. Gonzales*, 409 F.3d 607, 613 (3d. Cir. 2005). Here, the BIA did not adopt the IJ's adverse credibility determination in its entirety but only adopted specific findings of the IJ in support of the BIA's conclusion. Hence, we conduct review of the IJ's decision insofar as it was relied upon by the BIA in reaching its conclusion.

testified about two subsequent visits.[4] The IJ was correct in its finding that Jin's embellishments in her testimony can support a finding of adverse credibility. *See Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 279 (3d Cir. 2004). Considering these inconsistencies, we find that the IJ's adverse credibility finding is supported by substantial evidence. Hence, Jin failed to meet her burden of providing credible testimony in support of her asylum application, and the BIA properly upheld the IJ's denial of her application.

The BIA also correctly found that Jin is not eligible for withholding of removal. As Jin was unable to sustain a claim for asylum, she is unable to establish the right to withholding of removal. *Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003).

Even if we were to assume credibility, Jin's claim would fail. Jin had the burden of showing that she was persecuted or had a well-founded fear of being persecuted in China on account of a statutorily protected ground. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i). Jin claimed that she was persecuted and that she fears that she will be persecuted in China for illegally harboring North Korean refugees. Even if one assumes

---

[4] The IJ misinterpreted the mother's letter, which indeed referenced two later police visits, but this does not explain Jin's omission of this fact from her initial asylum application. This mistake with respect to Jin's mother's letter, however, is not at issue because it was not specifically referenced or relied upon by the BIA in reaching its conclusion. Furthermore, even if it were relied upon by the BIA, it would constitute harmless error because the credibility determination is still supported by substantial evidence. *See Mejia-Paiz v. INS*, 111 F.3d 720, 724 (9th Cir. 1997) (holding that a mistaken finding of inconsistency was not enough to constitute reversible error because it was but one of numerous details of the case).

8

that Jin is correct that the Chinese authorities sought or will seek her arrest, an isolated instance of harboring North Korean refugees is not a protected ground. Jin failed to demonstrate that she harbored North Korean refugees out of a political belief or that she meets any other protected ground recognized by 8 U.S.C. § 1158(b)(1)(B)(i).

**III.**

For the foregoing reasons, we will deny the petition for review.